**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

15-cr-20385-MIDDLEBROOKS/GARBER
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

**vs.**

**VLADIMIR PRIETO,**
**RUBEN MARANGES,**
**JAVIER PAULINO,**
**ARMANDO LUGO,**
**and**
**MARIO IZQUIERDO,**

FILED BY ___RB___
Dep.t/; Cerk

*May 28, 2015*

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Miami

                        **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered

Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4.     CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. CMS first contracted with TriCenturion, a Program Safeguard Contractor. Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

5.     Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with

Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

## Part A Coverage and Regulations

### Reimbursements

6.     The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.  A patient qualified for home health benefits only if the patient:

(a)     was confined to the home, also referred to as homebound;

(b)     was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C."); and

(c)     the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a P.O.C. for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

### Record Keeping Requirements

7.     Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare,

through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

8.  Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a: (i) P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

9.  Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any instruction provided to the patient and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist, and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

10. Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified home health agency. The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient. The HHA's professional

supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

11.      Medicare paid for insulin injections by an HHA when a beneficiary was determined to be unable to inject his/her own insulin and the beneficiary had no available caregiver able or willing to inject the beneficiary.  The basic requirement that the beneficiary be confined to the home or be homebound was a continuing requirement for a Medicare beneficiary to receive home health benefits.

## The Defendants and Related Companies

12.      USA Home Care Solution Agency, Corp. ("USA Home Care") was incorporated on or about June 30, 2004, with its principal place of business in Miami-Dade County, in the Southern District of Florida.  USA Home Care was an HHA that purported to provide home health care services to eligible Medicare beneficiaries.  On or about March 15, 2008, USA Home Care obtained its Medicare provider number, which authorized USA Home Care to submit claims to Medicare for HHA-related benefits and services.

13.      Loisel Enterprises Inc. ("Loisel") was a Florida corporation, incorporated on or about July 8, 2010, with its principal place of business in Miami-Dade County, in the Southern District of Florida.

14.      Professional Training and Therapy Corp. ("Professional Training") was a Florida corporation, incorporated on or about March 13, 2012, with its principal place of business in Miami-Dade County, in the Southern District of Florida.

15.      USA Medical Training & Marketing Inc. ("USA Medical") was a Florida corporation, incorporated on or about March 11, 2013, with its principal place of business in Miami-Dade County, in the Southern District of Florida.

16.    Professional Diagnostic Investment Inc. ("Professional Diagnostic") was a Florida corporation, incorporated on or about August 11, 2011, with its principal place of business in Miami-Dade County, in the Southern District of Florida.

17.    J & V Florida Maintenance Inc. ("J & V") was a Florida corporation, incorporated on or about September 9, 2011, with its principal place of business in Miami-Dade County, in the Southern District of Florida.  On or about November 3, 2011, corporate paperwork was filed to change the name to Professional Consultant & Investment Inc. ("Professional Consultant").

18.    ALM Professional Inc. ("ALM") was a Florida corporation, incorporated on or about September 28, 2011, with its principal place of business in Miami-Dade County, in the Southern District of Florida.

19.    Lugo Marketing Inc. ("Lugo Marketing") was a Florida corporation, incorporated on or about December 15, 2010, with its principal place of business in Miami-Dade County, in the Southern District of Florida.  On or about March 7, 2012, corporate paperwork was filed to change the name to Lugo Investment Transportation & Marketing Inc. ("Lugo Investment").

20.    Geriatric Treatment Center, Inc. ("Geriatric") was a Florida corporation, incorporated on or about July 9, 2004, with its principal place of business in Miami-Dade County, in the Southern District of Florida.  It purported to provide home health therapy staffing services to eligible Medicare beneficiaries on behalf of one or more Miami-Dade County HHAs.

21.    Brothers Taylor Rehabilitation Center Inc. ("Brothers Taylor") was a Florida corporation, incorporated on or about March 8, 2011, with its principal place of business in Miami-Dade County, in the Southern District of Florida.

22.    Defendant **VLADIMIR PRIETO**, a resident of Miami-Dade County, was an owner and operator of USA Home Care.

23.     Defendant **RUBEN MARANGES**, a resident of Miami-Dade County, was an administrator of USA Home Care.

24.     Defendant **JAVIER PAULINO**, a resident of Miami-Dade County, was a secretary of USA Home Care.  He was also the president and registered agent of USA Medical, Professional Diagnostic, Professional Consultant, and J&V.

25.     Defendant **ARMANDO LUGO**, a resident of Miami-Dade County, was the treasurer of USA Home Care.  He was also the president and registered agent of ALM Professional, Lugo Marketing, and Lugo Investment.

26.     Defendant **MARIO IZQUIERDO**, a resident of Miami-Dade County, was the vice president and registered agent of Loisel, the president, director and registered agent of Professional Training, and was employed by Geriatric.

27.     Joel San Pedro, a resident of Miami-Dade County, was an owner and operator of Geriatric.

28.     Jose Alvarez, a resident of Miami-Dade County, was the owner and operator of Brothers Taylor, and an operator of Geriatric.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 23 and 26 through 28 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2009, and continuing through at least in or around July 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR PRIETO,**
**RUBEN MARANGES,**
**and**
**MARIO IZQUIERDO,**

-7-

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, including Joel San Pedro and Jose Alvarez, to commit certain offenses against the United States, that is:

      a.    to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347; and

      b.    to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

    3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; and (b) concealing the submission of false and fraudulent claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

    The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4.      **VLADIMIR PRIETO**, **RUBEN MARANGES**, and their co-conspirators paid patient recruiters kickbacks in exchange for the referral of Medicare beneficiaries to be placed at USA Home Care which then billed Medicare for home health services that were not medically necessary and not provided to Medicare beneficiaries.

5.      **VLADIMIR PRIETO**, **RUBEN MARANGES**, and their co-conspirators paid Joel San Pedro, Jose Alvarez and other co-conspirators to provide them with documentation representing that Geriatric provided home health services to USA Home Care Medicare beneficiaries when, in fact, these services were often not provided.

6.      **VLADIMIR PRIETO**, **RUBEN MARANGES**, **MARIO IZQUIERDO**, Joel San Pedro, and their co-conspirators caused patient documentation to be falsified to make it appear that Medicare beneficiaries qualified for and received home health services that were, in fact, not medically necessary and not provided.

7.      **VLADIMIR PRIETO**, **RUBEN MARANGES**, **MARIO IZQUIERDO**, and their co-conspirators submitted and caused the submission of false and fraudulent claims to Medicare, through the use of interstate wire transmissions, seeking payment for the costs of home health services that were not medically necessary and not provided.

8.      As a result of these false and fraudulent claims, Medicare paid USA Home Care approximately $8.7 million.

9.      **VLADIMIR PRIETO**, **RUBEN MARANGES**, **MARIO IZQUIERDO** and their co-conspirators diverted the fraud proceeds for the personal use and benefit of themselves and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
**Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 28 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2009, and continuing through at least in or around July 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR PRIETO,**
**RUBEN MARANGES,**
**JAVIER PAULINO,**
**ARMANDO LUGO,**
**and**
**MARIO IZQUIERDO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, and others known and unknown to the Grand Jury, including Joel San Pedro and Jose Alvarez, to commit certain offenses against the United States, that is:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, in violation of Title 18, United States Code, Section 371;

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

    c.     to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

    3.     It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for referring Medicare beneficiaries to USA Home Care to serve as patients; and (2) submitting and causing the submission of claims to Medicare for home health services that USA Home Care purported to provide to those beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

    4.     **VLADIMIR PRIETO**, **JAVIER PAULINO**, and **ARMANDO LUGO** cashed checks for their co-conspirators, knowing that the cash they provided to their co-conspirators would be used to pay kickbacks to patient recruiters who provided Medicare beneficiaries to USA Home Care.

    5.     **VLADIMIR PRIETO**, **RUBEN MARANGES**, and their co-conspirators offered and paid kickbacks to co-conspirator patient recruiters, including **MARIO IZQUIERDO**, in return for referring Medicare beneficiaries to USA Home Care for purported home health services.

    6.     **MARIO IZQUIERDO**, Joel San Pedro, Jose Alvarez and their co-conspirators accepted kickbacks from co-conspirators in return for referring Medicare beneficiaries to USA Home Care for home health services.

7.     **VLADIMIR PRIETO**, **RUBEN MARANGES**, **MARIO IZQUIERDO**, and their co-conspirators caused USA Home Care to submit claims to Medicare for home health services purportedly provided to the recruited Medicare beneficiaries.

8.     **VLADIMIR PRIETO, RUBEN MARANGES, MARIO IZQUIERDO** and their co-conspirators caused Medicare to pay USA Home Care based upon the claims for home health services purportedly provided to the recruited Medicare beneficiaries.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.     On or about April 30, 2013, **VLADIMIR PRIETO** paid a kickback to a co-conspirator patient recruiter through USA Home Care Bank of America corporate account check number 7108, in the approximate amount of $4,230.

2.     On or about June 3, 2013, **VLADIMIR PRIETO** paid a kickback to a co-conspirator patient recruiter through USA Home Care U.S. Century Bank corporate account check number 1095, in the approximate amount of $2,310.

3.     On or about July 18, 2013, **RUBEN MARANGES** paid a kickback to a co-conspirator patient recruiter through personal check number 284, drawn on an account held in his name at Bank of America, in the approximate amount of $3,900.

4.     On or about July 19, 2013, **RUBEN MARANGES** paid a kickback to a co-conspirator patient recruiter through personal check number 285, drawn on an account held in his name at Bank of America, in the approximate amount of $4,000.

5.     On or about May 15, 2012, **JAVIER PAULINO** cashed USA Home Care Bank of America corporate account check number 6153, in the approximate amount of $4,400.

6.      On or about June 13, 2012, **JAVIER PAULINO** cashed USA Home Care Bank of America corporate account check number 6215, in the approximate amount of $5,000.

7.      On or about March 28, 2012, **ARMANDO LUGO** cashed USA Home Care Bank of America corporate account check number 6013, in the approximate amount of $3,100.

8.      On or about July 25, 2012, **ARMANDO LUGO** cashed USA Home Care Bank of America corporate account check number 6339, in the approximate amount of $3,650.

9.      On or about May 29, 2012, **MARIO IZQUIERDO** received USA Home Care Bank of America corporate account check number 6166, in the approximate amount of $2,200, in return for referring patients to USA Home Care.

10.     On or about June 4, 2012, **MARIO IZQUIERDO** received USA Home Care Bank of America corporate account check number 6203, in the approximate amount of $1,500, in return for referring patients to USA Home Care.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 3-6**
**Payment of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.      Paragraphs 1 through 23 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR PRIETO**
**and**
**RUBEN MARANGES,**

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to a person to induce such person to refer an individual to a person for the furnishing and arranging

for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, as set forth below:

| Count | Defendant | Approximate Date | Approximate Kickback Amount |
|-------|-----------|------------------|-----------------------------|
| 3 | VLADIMIR PRIETO | April 30, 2013 | $4,230 |
| 4 | VLADIMIR PRIETO | June 3, 2013 | $2,310 |
| 5 | RUBEN MARANGES | July 18, 2013 | $3,900 |
| 6 | RUBEN MARANGES | July 19, 2013 | $4,000 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNTS 7-8
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1 through 21 and 26 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**MARIO IZQUIERDO,**

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date | Approximate Kickback Amount |
|:---:|:---:|:---:|
| 7 | May 29, 2012 | $2,200 |
| 8 | June 4, 2012 | $1,500 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

**COUNT 9**
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1.      Paragraphs 1 through 22 and 24 through 25 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around August 2011, and continuing through at least in or around August 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR PRIETO,**
**JAVIER PAULINO,**
**and**
**ARMANDO LUGO,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the

source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i).

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 10-15
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.      Paragraphs 1 through 22 and 24 through 25 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the date specified below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**VLADIMIR PRIETO,**
**JAVIER PAULINO,**
**and**
**ARMANDO LUGO,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, as set forth below:

| Count | Defendant | Approximate Transaction Date | Description of Financial Transaction |
|---|---|---|---|
| 10 | **VLADIMIR PRIETO** | May 30, 2012 | The cashing of check no. 6167, drawn on the account of USA Home Care ending in 5096, in the approximate amount of $2,450. |

| 11 | **VLADIMIR PRIETO** | May 30, 2012 | The cashing of check no. 6168, drawn on the account of USA Home Care ending in 5096, in the approximate amount of $4,200. |
|----|------|------|------|
| 12 | **JAVIER PAULINO** | May 15, 2012 | The cashing of check no. 6153, drawn on the account of USA Home Care ending in 5096, in the approximate amount of $4,400. |
| 13 | **JAVIER PAULINO** | June 13, 2012 | The cashing of check no. 6215, drawn on the account of USA Home Care ending in 5096, in the approximate amount of $5,000. |
| 14 | **ARMANDO LUGO** | March 28, 2012 | The cashing of check no. 6013, drawn on the account of USA Home Care ending in 5096, in the approximate amount of $3,100. |
| 15 | **ARMANDO LUGO** | July 25, 2012 | The cashing of check no. 6339, drawn on the account of USA Home Care ending in 5096, in the approximate amount of $3,650. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendants,

**VLADIMIR PRIETO,**
**RUBEN MARANGES,**
**JAVIER PAULINO,**
**ARMANDO LUGO,**
**and**
**MARIO IZQUIERDO,**

have an interest.

2.      Upon conviction of a violation alleged in Counts 1 through 8 of this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United

-17-

States Code, Section 982(a)(7), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation.

3.      Upon conviction of a violation alleged in Counts 9 through 15 of this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offense, or any property traceable to such property.

4.      The property which is subject to forfeiture includes, but is not limited to, the following:

(a)      A sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the federal healthcare offenses alleged in this Indictment, which the United States of America will seek as a forfeiture money judgment against the defendants upon conviction and as part of their respective sentence; and

(b)      A sum of money equal in value to the property, real or personal, involved in the federal money laundering offenses alleged in this Indictment, or any property traceable, which the United States of America will seek as a forfeiture money judgment against the defendants upon conviction and as part of their respective sentence.

All pursuant to Title 18, United States Code, Sections 982(a)(1),(7), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
GEJAA GOBENA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ANNE P. MCNAMARA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO. _____

vs.

**CERTIFICATE OF TRIAL ATTORNEY\***

VLADIMIR PRIETO, et al,

_____ Defendants.
_____/          **Superseding Case Information:**

**Court Division:** (Select One)

|  |  |  |  |
|---|---|---|---|
| X | Miami | Key West |  |
| | FTL | WPB | FTP |

New Defendant(s)                    Yes _____      No _____
Number of New Defendants                        _____
Total number of counts                          _____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:      (Yes or No)      YES
     List language and/or dialect      SPANISH

4.   This case will take 15 days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                              (Check only one)

     I:      0 to 5 days          _____
     II:     6 to 10 days         _____        Petty      _____
     III:    11 to 20 days        __X__        Minor
     IV:     21 to 60 days        _____        Misdem.
     V:      61 days and over     _____        Felony     __X__

6.   Has this case been previously filed in this District Court?   (Yes or No)      NO
     If yes:
     Judge:                                 Case No. _____
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?   (Yes or No)      NO
     If yes:
     Magistrate Case No.                    _____
     Related Miscellaneous numbers:         _____
     Defendant(s) in federal custody as of  _____
     Defendant(s) in state custody as of    _____
     Rule 20 from the _____       District of _____

     Is this a potential death penalty case? (Yes or No)      NO

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?      _____ Yes      X      No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?      _____ Yes      X      No

_____
ANNE P. MCNAMARA
DOJ TRIAL ATTORNEY
Court ID:   A5501847

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: VLADIMIR PRIETO

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:      Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**      Five (5) years' imprisonment

Counts #: 3-4

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Sections 1320a-7b(b)(2)(A)

**\*Max. Penalty:**      Five (5) years' imprisonment

Count #: 9

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**      Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Counts #: 10-11

Money Laundering

Title 18, United States Code, Sections 1956(a)(1)(B)(i)

**\*Max. Penalty:**        Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: RUBEN MARANGES

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:       Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**       Five (5) years' imprisonment

Counts #: 5-6

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Sections 1320a-7b(b)(2)(A)

**\*Max. Penalty:**       Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: JAVIER PAULINO

**Case No**:

Count #: 2

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**    Five (5) years' imprisonment

Count #: 9

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**    Twenty (20) years' imprisonment

Counts #: 12-13

Money Laundering

Title 18, United States Code, Sections 1956(a)(1)(B)(i)

**\*Max. Penalty:**    Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ARMANDO LUGO

**Case No**:

Count #: 2

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\* Max. Penalty:**       Five (5) years' imprisonment

Count #: 9

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**       Twenty (20) years' imprisonment

Counts #: 14-15

Money Laundering

Title 18, United States Code, Sections 1956(a)(1)(B)(i)

**\*Max. Penalty:**       Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: MARIO IZQUIERDO

Case No:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:　　Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**　　Five (5) years' imprisonment

Counts #: 7-8

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Sections 1320a-7b(b)(1)(A)

**\*Max. Penalty:**　　Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**